USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9/5/2014

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ X
                                                                   :
RAMNAND RAMNARAINE,                                                :
                                                                   :
                                    Plaintiff,                     :    1:13-CV-7889-GHW
                                                                   :
            -against-                                              :    MEMORANDUM OPINION
                                                                   :             AND ORDER
MERRILL LYNCH & CO., INC.; MERRILL                                 :
LYNCH, PIERCE, FENNER, & SMITH; BANK                               :
OF AMERICA CORP.,                                                  :
                                                                   :
                                    Defendants.                    :
------------------------------------------------------------------ X

GREGORY H. WOODS, District Judge:

      Ramnand Ramnaraine brings this action against Merrill Lynch & Co., Inc. ("Merrill Lynch"), Merrill Lynch, Pierce, Fenner, & Smith ("MLPFS"), and Bank of America, Corp. ("BOA") (collectively, "Defendants") for a breach of fiduciary duty under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 *et seq.* Defendants move for summary judgment, primarily on the ground that Ramnaraine's claim is untimely. For the reasons that follow, Defendants' motion for summary judgment is granted.

## I.    BACKGROUND

      Pursuant to ERISA Sections 502(a)(2) and 409, 29 U.S.C. §§ 1132(a)(2), 1109, Ramnaraine brings this civil action alleging that Defendants breached their fiduciary duty owed to him under ERISA Sections 404 and 405, 29 U.S.C. §§ 1104, 1105 by failing to comply with his instruction to sell all of his shares of Merrill Lynch stock held in three ERISA plans. Compl. ¶¶ 22, 34-43. The following facts are not disputed. Ramnaraine worked for MLPFS as a computer technician from 1986 to 2002. Ramnaraine Dep.[1] 24-27. MLPFS was a wholly-owned subsidiary of Merrill Lynch until

---

[1] Excerpts from Ramnaraine's deposition are submitted both as Ex. B to the Declaration of Beth Kaufman (Dkt. No. 32) and Ex. I to the Declaration of Brittany Weiner (Dkt. No. 33).

2009, when BOA acquired Merrill Lynch.  Answer ¶ 11.  Ramnaraine had accounts in three plans, all subject to ERISA:  a Merrill Lynch 401(k) Savings & Investment Plan ("401(k) Plan"), a Retirement Accumulation Plan ("RAP"), and an Employee Stock Ownership Plan ("ESOP").  Affidavit of Freda White (Dkt. No. 31) ¶¶ 2-3; Ramnaraine Dep. 33-35.  During his employment with MLPFS, Ramnaraine contributed to the 401(k) Plan and Merrill Lynch made contributions to the RAP and ESOP.  Ramnaraine Dep. 33-35.

On February 13, 2006 Ramnaraine made a call to the 401(k) Plan Contact Center.  Ramnaraine Dep. 43; Jan. 24, 2014 Affidavit of Talmadge Blackmon (Dkt. No. 32-8) ¶¶ 2-3.  This call forms the basis of Ramnaraine's claim, and the parties very much dispute what happened on that call.  Due to a technical malfunction, the February 13, 2006 call was not recorded.[2]  Blackmon Aff. ¶¶ 2-10.  Ramnaraine contends that he instructed the representative to sell all of his shares of Merrill Lynch stock related to all three plans and to "leave it as cash" in his 401(k) account.  Ramnaraine Dep. 42-45.  Defendants deny that Ramnaraine made such an instruction and point to a variety of circumstantial evidence that they say shows that Ramnaraine could not have successfully sold his shares as he claims, including that the call was relatively short, that a supervisor would have been required to be on the line but was not, that shares cannot be held as cash in the accounts at issue, and that no trade

---

[2] Ramnaraine disputes that the recording of the call does not exist, arguing that the Blackmon Aff. was dated seven years after the call at issue and that Defendants have "not produced . . . any evidence regarding the error message" or "the allegation."  *See* 56.1 Statement ¶¶ 94-103.  The Court notes, however, that it previously specifically requested the Blackmon Aff. to explain whether the call had been recorded.  Jan. 10, 2014 Minute Entry.  The sworn affidavit lays out the steps Defendants took to locate the call and attaches evidence in the form of screenshots of error messages related to the call.  Ramnaraine's protestations to the contrary notwithstanding, it is black letter law that declarations and affidavits are properly considered evidence in considering a summary judgment motion.  Fed. R. Civ. P. 56(c)(1)(A) ("A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, *affidavits or declarations*, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" (emphasis added)).  Certainly the fact that the affidavit was dated nearly seven years after the phone call cannot be a basis to discredit it, particularly given the evidence that Ramnaraine himself asks this Court to rely upon, such as Ramnaraine's deposition that was taken more than seven years after the event in question.  In any event, a recording of the call is not before the Court at this time and the Court ultimately concludes that the motion must be granted, regardless of what occurred on the call.

confirmations were sent to Ramnaraine.  56.1 Statement of Material Facts[3] (Dkt. No. 44) ("56.1 Statement") ¶¶ 39-61.

It is not disputed that Ramnaraine placed calls to the 401(k) Plan Contact Center in September 2007 and April 2008.  Ramnaraine Dep. 54-55.  In support of their moving brief, Defendants submitted an affidavit from Steven Chiang, a client services manager for MLPFS, that described two calls from Ramnaraine during those time periods as well as a third call made by a representative from the 401(k) Plan Contact Center to Ramnaraine in response to one of those calls.  Affidavit of Steven Chiang (Dkt. No. 30) ¶¶ 1, 6.  This affidavit stated that Chiang had listened to recordings of these three calls and that in both September 2007 and April 2008, Ramnaraine both asked for and was informed of his share balances as of those times.  *Id.* ¶ 6.  Ramnaraine denied these facts, stating that the call recordings or transcripts had not been produced and that Ramnaraine's deposition testimony placed these facts in dispute.  56.1 Statement ¶¶ 79-88.  Indeed, Ramnaraine testified, for example, that "[a]fter 2006, every call that I made to that number was regarding class action lawsuits.  I was inquiring how many shares I had between 1999 and 2002," Ramnaraine Dep. 41, and that "I did not ask for my share balance in those accounts . . . because in 2006 I asked for the shares to be sold," *id.* at 55.  Ramnaraine also testified, however, that he was uncertain about precisely what transpired on these calls.  He testified that "after 2006, I *probably* called the 401(k) number just to inquire how many shares I had between 1999 and 2002 for the class action lawsuits."  *Id.* at 53 (emphasis added).  When asked if he recalled what he said during the 2007 call, Ramnaraine said "no."  *Id.* at 41.  He further testified that he did not "think" that he was told his share balance as of 2007 during the September 2007 call.  *Id.* at 42; *see also id.* at 55 ("Q:  Were you told your Merrill Lynch shares on that call?  A:  I don't remember, ma'am.").  Ramnaraine also included in his 56.1 Statement that he "has not listened to a recording of any telephone call he made to Merrill Lynch," 56.1 Statement ¶ 129, though his

---

[3] References to a paragraph in the 56.1 Statement incorporate the evidentiary materials cited therein.

testimony on point was that he did not "recall" having a recording played to him. Ramnaraine Dep. 41-42.

Given the nature of Ramnaraine's denial – that he had not listened to the recordings or seen the transcripts of these calls – the Court held a conference on August 14, 2014 regarding whether the recordings referenced by Chiang were available for submission to the Court. In their reply, Defendants have now included a recording and transcript of the September 25, 2007 call from Ramnaraine and a recording of the April 25, 2008 call to Ramnaraine. Declaration of Paulette Morgan (Dkt. No. 41) Exs. A-B, E. To rebut Plaintiff's assertion that he had not listened to recordings of any telephone calls between himself and Merrill Lynch, Defendants further submitted a recording and transcript of a heretofore unmentioned January 9, 2009 call from Ramnaraine, during which Chiang plays for Ramnaraine both a recording of a April 24, 2008 call from Ramnaraine and the April 25, 2008 call to Ramnaraine. Morgan Decl. Ex. C-D.

During the September 25, 2007 call, Ramnaraine stated he was "checking on my shares" and needed to reset his PIN. Sept. 2007 Tr. at 2-3. The representative asked, "[Y]ou are checking on how your account is doing? . . . The balances?" to which Ramnaraine replied, "Yes. . . . Balances and the, you know, what the shares are right now." *Id.* at 3. The representative then informed Ramnaraine of the balances of all three plans. *Id.* Ramnaraine then specifically asked, "[W]hat is the total amount of shares?" to which the representative begins to answer by telling Ramnaraine that his 401(k) had 3,063 shares. *Id.* at 4. Ramnaraine replied, "3,063, okay," and then asked whether the representative could give him the total number of shares in all of the accounts. *Id.* The representative eventually adds up all the accounts and tells Ramnaraine that his total number of shares is 4,496 shares. *Id.* at 6. Ramnaraine repeats, "4,496 shares, right?" to which the representative responds in the affirmative. *Id.* At no point during the call does Ramnaraine state that he had sold his shares or that the amount of shares was incorrect.

For the reasons stated below, the September 25, 2007 call is dispositive, but the same result would be reached as a result of the April 25, 2008 call. That call from the representative to Ramnaraine was prompted by his request for share information from 1999 to 2002. Jan. 9, 2009 Tr.[4] at 15-17. After being provided this information, Ramnaraine asked, "[M]y total shares are how many now?" *Id.* at 18. The representative confirmed that Ramnaraine meant currently, and that he "just want[ed] the shares of stock." *Id.* The representative then, as before, gave Ramnaraine each of his share balances per account, in the amounts of 3,104 in the 401(k), 1,001 in the ESOP, and 451 in the RAP. *Id.* at 19. At no point during the call does Ramnaraine state that he had sold his shares or that the amount of shares was incorrect.[5]

Ramnaraine first brought the instant claim in the Eastern District of New York on June 6, 2011. *See Ramnaraine v. Merrill Lynch & Co, Inc. et al.*, No. 11 Civ. 2714 (E.D.N.Y. 2011). That case was dismissed without prejudice on September 13, 2011 pursuant to a stipulation between the parties in order for Ramnaraine to exhaust administrative remedies prior to the filing of the complaint. *Id.* Dkt. No. 16; 56.1 Statement ¶ 105. The instant complaint was filed November 6, 2013. Dkt. No. 1.

## II. DISCUSSION

### A. Standard of Review

Defendants are entitled to summary judgment if they can show that "there is no genuine dispute as to any material fact and that [defendants are] entitled to judgment as a matter of law."

---

[4] As noted above, Defendants submitted a recording of the April 25, 2008 call, but the transcript of that call was submitted to the Court only as embedded within the transcript of the January 9, 2009 call, when the April 25, 2008 call was played to Ramnaraine.

[5] Defendants also point to evidence that "quarterly account statements were produced for mailing" to Ramnaraine's home address. Affidavit of Thomas Buckley (Dkt. No. 29) ¶ 6, Ex. A; Ramnaraine Dep. 14. Ramnaraine testified that he did not receive any statements – and thus did not have actual knowledge of the facts giving rise to his claim – until 2009, when BOA acquired Merrill Lynch. Ramnaraine Dep. 93-94. (The Court notes that Ramnaraine's complaint, ¶ 19, and even his brief, *passim*, conflict with this testimony, as those documents refer to Ramnaraine first receiving a statement in October 2008.) The Court need not conclude whether this fact is genuinely disputed in order to decide this motion, though if such documents were in fact sent, these statements too would be dispositive, even if Ramnaraine failed to read them. *See infra* at 6-7.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). "The same standard applies whether summary judgment is granted on the merits or on an affirmative defense such as the statute of limitations." *Giordano v. Market America, Inc.*, 599 F.3d 87, 93 (2d Cir. 2010). "Although summary judgment may, of course, be an appropriate means for disposing of an action that is barred by the statute of limitations, it may not be granted if there is a genuine issue of fact as to when the limitations period began or expired and that fact is material to the question of whether the statute has run." *Id.*

A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," while a fact is material if it "might affect the outcome of the suit under governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To defeat a motion for summary judgment, the non-movant "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)). "Mere speculation or conjecture as to the true nature of the facts" will not suffice, *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (quotations omitted), nor will wholly implausible alleged facts or bald assertions that are unsupported by evidence. *See Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991); *Argus Inc. v. Eastman Kodak Co.*, 801 F.2d 38, 45 (2d Cir. 1986) (citing *Matsushita*, 475 U.S. at 585-86). In determining whether a genuine dispute as to a material fact exists, the Court is "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (quotations omitted).

### B. Applicable Statute of Limitations

29 U.S.C. § 1113 governs the timeliness of this breach of fiduciary duty action. Despite the fact that Merrill Lynch pointed to this statute in its moving brief, Def. Br. at 11-12, Ramnaraine argues that there is no ERISA statute of limitations on point and therefore this Court must turn to a similar

state statute of limitations under state law, Pl. Br. at 5. However, the very case that Ramnaraine cites for this proposition makes clear that 29 U.S.C. § 1113 applies. *Bilello v. JPMorgan Chase Ret. Plan*, 607 F. Supp. 2d 586, 592 n.3 (S.D.N.Y. 2009) (explaining that although ERISA does not have a statute of limitations for civil enforcement actions generally, it does have a statute of limitations for breach of fiduciary duty claims).

This statute of limitations provides, as relevant here, that a plaintiff must bring an action for breach of fiduciary duty on or before the earlier of "(1) six years after . . . the date of the last action which constituted a part of the breach or violation," or "(2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation," except for cases of fraud or concealment, which are not alleged in this case. 29 U.S.C. § 1113. As the plain language of the statute makes clear, the claim must be brought within the earliest applicable limitations period.

The Second Circuit has explained that a plaintiff has "actual knowledge" in the context of this statute "when he has knowledge of all material facts necessary to understand that an ERISA fiduciary has breached his or her duty or otherwise violated the Act." *Caputo v. Pfizer, Inc.*, 267 F.3d 181, 193 (2d Cir. 2001). Plaintiff need not have knowledge of the law, but must only have "knowledge of all facts necessary to constitute a claim." *Id.* Constructive knowledge is not sufficient, but the statute does not "'excuse willful blindness.'" *Young v. Gen. Motors Inv. Mgmt. Corp.*, 550 F. Supp. 2d 416, 419 n.3 (S.D.N.Y. 2008) (quoting *Edes v. Verizon Communications, Inc.*, 417 F.3d 133, 142 (1st Cir. 2005)), *aff'd* 325 F. App'x 31 (2d Cir. 2009). "[K]nowledge of facts cannot be attributed to plaintiffs who have no actual knowledge of them," but the focus is on whether "the documents provided to plan participants sufficiently disclosed the alleged breach of fiduciary duty, not whether individual Plaintiffs actually saw or read the documents." *Id.* A participant cannot "disregard information clearly provided," as that would "effectively provide an end run around ERISA's limitations requirement." *Id.*

### C. Analysis

As an initial matter, the Court will consider the recordings and transcripts submitted by Defendants, despite the fact that they were not submitted in connection with Defendants' moving papers. "'A district court enjoys broad discretion . . . to consider arguments made for the first time in a reply brief, [and] to rely on evidence submitted with the reply papers.'" *Dixon v. NBCUniversal Media, LLC*, 947 F. Supp. 2d 390, 396 (S.D.N.Y. 2013) (quoting *Compania Del Bajo Caroni (Caromin), C.A. v. Bolivarian Rep. of Venez.*, 341 Fed. App'x 722, 724 (2d Cir. 2009) (summary order)). Although parties should not "submit on reply evidentiary information that was available to the moving party at the time that it filed its motion and that is necessary in order for that party to meet its burden, a court may choose to admit such evidence where the opposing party will suffer no prejudice." *Id.* (quotations and citation omitted). *Id.* Defendants should have submitted recordings – or at least transcripts – of the calls in their moving brief rather than a summary of their content, particularly given that the content of the calls is the crux of Defendants' argument to dismiss Ramnaraine's claim. *See* Fed. R. Evid. 1001-1002. The Court does not believe, however, that Ramnaraine is prejudiced by the Court's consideration of these materials now. The content of these calls is, in fact, precisely as Chiang described the calls in his affidavit, which was submitted with Defendants' moving papers, and Defendants do not present any new argument with respect to the calls in their reply. Further, at the August 14, 2014 telephone conference, the Court told counsel for Ramnaraine that they could seek leave to file a sur-reply following the submission of these materials. No such request has been made. Were the Court to deny this motion, it would be without prejudice to renewal upon submission of the transcripts and recordings in the moving brief, thus leading to unnecessarily duplicative briefing. For these reasons, the Court believes consideration of the recordings is proper.

The information provided to Ramnaraine in both the September 25, 2007 call and the April 25, 2008 call precludes his claim first brought more three years later on June 6, 2011.[6]  There is no genuine issue of material fact that Ramnaraine not only received share balances during those calls, but specifically asked for his share balances.  Sept. 2007 Tr. at 3; Jan. 9, 2009 Tr. at 18.  In the September call, Ramnaraine even confirmed the number of shares by repeating the number given to him by the representative.  Sept. 2007 Tr. at 6.  Even if Defendants had failed to comply with an instruction by Ramnaraine to sell his shares, Ramnaraine had actual knowledge of this purported failure no later than September 25, 2007.  With the knowledge that 4,496 shares remained in his accounts as of that date, Ramnaraine had "knowledge of all facts necessary to constitute a claim" that the Defendants had breached their fiduciary duty by failing to execute a sale of the stock.  *Caputo*, 267 F.3d at 193.  Ramnaraine must have brought an action no later than September 25, 2010.  His first complaint, filed on June 6, 2011, is time-barred under 29 U.S.C. § 1113(2); his complaint in this case, filed more than two years later, is even more so.

## III.   CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is granted and Ramnaraine's claim is dismissed.  The Court need not reach the alternative grounds upon which Defendants move for summary judgment.  The Clerk of Court is directed to close the pending motion at Dkt. No. 26 and close this case.

SO ORDERED.

Dated: September 5, 2014
New York, New York

_____
GREGORY H. WOODS
United States District Judge

---

[6] The parties focus on the timeliness of the June 6, 2011 complaint rather than the instant complaint.  *See* Def. Br. at 14; Pl. Br. at 5.  Because the Court concludes that this case was untimely even measuring from the earlier date of the first complaint in June of 2011, there is no need to reach the issues of whether the statute of limitations was tolled between the time of the first complaint and the instant complaint or whether the 2013 complaint is barred even under the six-year statute of limitations under 29 U.S.C. § 1113(1).  *See* Pl. Br. at 6; Def. Br. at 16, n.5.